**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-01740-CMA-KMT

KATIE BROWN,

    Plaintiff,

v.

JAMI FRYER,
ROBERT FRYER,
CINCINNATI INSURANCE COMPANY, and
AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING MOTION TO DISMISS CLAIMS**

---

This matter is before the Court on the "Motion to Dismiss Pursuant to Rule 12(b)(6)," filed by Defendant Cincinnati Insurance Company ("CIC"). (Doc. # 17.) Jurisdiction in this case is proper pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). For the reasons that follow, the motion is granted.

## I. BACKGROUND[1]

On May 15, 2009, Defendant Jami Fryer ("Jami Fryer") was driving a 2005 Mercury Mariner ("the vehicle") on Interstate 25 in Colorado. Plaintiff Katie Brown ("Plaintiff") was a passenger in the vehicle. During the trip, another car changed lanes

---

[1] The following facts are taken from Plaintiff's Complaint (Doc. # 3) and the insurance policy related to the claims subject to the instant motion (*see* Doc. # 1-27). *See Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

in front of the vehicle and, in reacting, Jami Fryer lost control of and rolled the vehicle, causing injuries to Plaintiff.  Jami Fryer was driving the vehicle with the permission of her father, Defendant Robert Fryer ("Robert Fryer"), who owned the vehicle.

Robert Fryer had previously insured the vehicle.  (*See* Doc. # 1-27.)  The insurance policy was issued on behalf of CIC by General Insurance Services, out of LaPorte, Indiana.  (*Id.* at 1.)  It was issued to Robert Fryer and Jacki Fryer[2] at an address in LaPorte, Indiana.  (*Id.*)  Following the heading "**CHOICE OF LAW**," the policy states that "[i]t is understood and agreed this policy and all of its terms shall be construed and interpreted in conformity with the laws of the state in which it is issued." (*Id.* at 21.)  The policy contains a section entitled "**UNINSURED MOTORISTS COVERAGE – INDIANA**," which provides, in pertinent part, that "'[w]e' will pay compensatory damages which a 'covered person' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of . . . '[b]odily injury' sustained by a 'covered person' and caused by an accident . . . ."  (*Id.* at 22.)  The policy also contains a similar provision entitled "**UNDERINSURED MOTORISTS COVERAGE – INDIANA**," which provides, in pertinent part, that "'[w]e' will pay compensatory damages which a 'covered person' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury' . . . [s]ustained by a 'covered person' . . . and . . . [c]aused by an accident."  (*Id.* at 27.) Both sections, which the Court will refer to collectively as the "UM/UIM provisions,"

---

[2]  The filings do not disclose Jami Fryer's relationship to Jacki Fryer, whom the Court presumes to be the former's mother.  In any event, Jacki Fryer is not a Defendant in this action.

define a "covered person" as, in relevant part, "[a]ny other person 'occupying' 'your covered auto.'" (*Id.* at 22, 27.)  Both sections also state that "[n]o lawsuit or action whatsoever or any proceeding in arbitration shall be brought against 'us' for the recovery of any claim under this endorsement unless the 'covered person' has satisfied all of the things that 'covered person' is required to do under this policy." (*Id.* at 26, 31.)

On May 11, 2012, Plaintiff filed suit in Colorado state court, and the case was eventually removed here.  (*See* Doc. # 1.)  Plaintiff alleges the following claims for relief: (1) negligence against Jami Fryer; (2) imputed liability under the family car doctrine against Robert Fryer; (3) breach of contract against CIC based on its refusal, "with the exception of some medical payments coverage," to provide UM/UIM benefits to Plaintiff; (4) bad faith breach of contract against CIC; (5) violation of Colo. Rev. Stat. §§ 10-3-1115 & 1116 against CIC; and (6) breach of contract against Defendant American Family Mutual Insurance Company ("American Family"), who is Plaintiff's insurance provider.  Only claims 3–6 are implicated by the instant motion.[3]

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is

---

[3] Plaintiff responded to CIC's motion on July 30, 2012 (Doc. # 15), to which CIC replied on August 14, 2012 (Doc. # 18).  Also, American Family responded in opposition to the instant motion on July 19, 2012 (Doc. # 10), to which CIC replied on August 2, 2012 (Doc. # 16).

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### III. DISCUSSION

In its motion to dismiss, CIC raises two main issues. First, CIC asserts that the Court should apply Indiana law in this case. (Doc. # 17 at 5-7.) Second, CIC argues

that Plaintiff has failed to state a claim against it.[4] (*Id.* at 7-15.) The Court will address these issues in turn, below.

**A.      CHOICE OF LAW**

CIC contends that the Court should "apply Indiana law to this Indiana insurance contract." (Doc. # 17 at 5-7.) The Court agrees.

In diversity actions, the Court applies "the substantive law of the forum state, including its choice of law rules." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). Colorado generally recognizes contractual choice of law provisions. *See, e.g.*, *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994). Contracting parties may choose the law to govern their relations, "unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern." *Id.* (citing Restatement (Second) of Conflict of Laws § 187 (1971)). Beneficiaries to a contract are "subject to any limitations imposed by the terms of the contract." *Nw. Parkway Pub. Highway Auth. v. Bayerische HYOP-UND Vereinsbank AG*, No. 08-cv-01819, 2010 WL 3155641, at *3 (D. Colo. Aug. 9, 2010) (unpublished) (quoting Restatement (Second) of Contracts § 309, cmt. b); *cf. ADT Sec. Servs., Inc. v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199, 1201 (D. Colo. 2006) ("a forum selection

---

[4] Initially, CIC had raised two additional arguments: (1) that Plaintiff's claim was time-barred; and (2) that Plaintiff had failed to corroborate her claims of a "miss and run" vehicle. (Doc. # 17 at 8-11.) However, CIC later withdrew both arguments without opposition from any party. (*See* Docs. ## 35 and 58.)

clause encumbers a third-party beneficiary who could reasonably have foreseen its designation as beneficiary").

In the instant case, as previously mentioned, the insurance policy covering the vehicle in which Plaintiff was riding specifically states that "the laws of the state in which it is issued" shall apply.  (Doc. # 1-27 at 21.)  CIC asserts, Plaintiff does not dispute, and the Court agrees that the policy was issued in Indiana, as "Robert and Jacki Fryer were residents of Indiana; the vehicle involved in the accident was registered in Indiana; and the policy is based on Indiana auto insurance law."  (Doc. # 17 at 7.)  Accordingly, a reasonable basis for the contracting parties' choice of law exists.  Further, because the statute-of-limitations issue has been resolved (*see* Doc. ## 58 and 63), applying Indiana law would not be contrary to the fundamental policy of Colorado, whose law would otherwise govern in this case.[5]

Even if the policy did not contain a choice of law provision, Indiana law would still apply.  Under Colorado choice of law rules, "an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract."  *Berry & Murphy, P.C.*, 586 F.3d at 808.  This determination is guided by a consideration of several factors under the Restatement (Second) of Conflict of Laws.  *See, e.g.*, *Poole v. State Farm Fire & Cas. Co.*, 941 F. Supp. 964, 966 (D. Colo. 1996) ("Colorado has adopted the Restatement . . . for resolving choice of law issues arising in contract

---

[5] In fact, as explained below, no substantive difference would be reached under Colorado law.

6

actions."). To determine the state with the most significant relationship to the contract, courts take into account:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. Analysis of these factors is further guided by consideration of:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188. *See, e.g.*, *TPLC, Inc. v. United Nat. Ins. Co.*, 44 F.3d 1484, 1490 (10th Cir. 1995) ("In analyzing which state has the most significant relationship, the principles set forth in Restatement (Second) sections 6 and 188 are to be taken into account.").

In the instant case, an analysis of these factors weighs in favor of applying Indiana law. To begin with, the Court agrees with CIC that the needs of an interstate system require respect for contractual choices. *See TPLC, Inc.*, 44 F.3d at 1491 ("Pennsylvania has the most significant relationship to the contract and the greatest interest in seeing that its laws apply when interpreting the notice provisions of insurance contracts written and issued by Pennsylvania insurers. It simply would not make sense to have [the defendant's] insurance contract notice provisions interpreted in fifty different ways every time a dispute arose between [the defendant] and one of its insureds." (quoting the district court with approval)). Also, as previously mentioned, no countervailing policy concerns are implicated by the choice of Indiana law now that CIC has withdrawn its statute-of-limitations defense. Moreover, no other state has an interest in the determination of the issues in this case. Additionally, the Court agrees with CIC that, since Plaintiff was not a party to the contract, she "would not have had any expectations as to that contract."[6] (Doc. # 16 at 8.) However, CIC and the Fryers, who entered into the contract, clearly expected that Indiana law would govern, as indicated by the choice of law provision included in the policy. Further, the policies underlying contract law in Indiana and Colorado are the same – *i.e.*, unambiguous contractual provisions are to be enforced as written. *Compare, e.g.*, *Piskorowski v.*

---

[6] The Court rejects Plaintiff's argument that requiring her to abide by the policy's limitations would be fundamentally unfair because she was not a party to the contract. (Doc. # 15 at 3-7.) Instead, the opposite seems true in that allowing Plaintiff to sue for benefits under the policy without holding her to its limitations would create a windfall for her and would undermine the intent of the parties who agreed to the contract's terms. *See Nw. Parkway Pub. Highway Auth.*, 2010 WL 3155641, at *3.

*Shell Oil Co.*, 403 N.E.2d 838, 844 (Ind. App. 1980) ("It is not the purpose of the law to abrogate the terms and provisions of contracts by construction where the language is clear and unambiguous but rather to enforce it as entered into by the parties" (quotation marks and citation omitted)), *with, e.g.*, *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997) ("It is axiomatic that in construing a document courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms."). Finally, the certainty, predictability, and uniformity of result, as well as the ease in determination and application of the law to be applied cut in favor of Indiana law; a determination to the contrary would create an unpredictable, and likely unsupportable, reality for parties entering into insurance contracts.[7] Accordingly, the Court applies Indiana law in this case.

**B.     FAILURE TO STATE A CLAIM**

CIC next contends that Plaintiff failed to state a claim under which relief can be granted, because "the obligations of CIC to pay benefits under the UM/UIM provisions are subject to conditions and limitations, which have not been satisfied." (Doc. # 17 at 8.) Again, the Court agrees.

As set forth above, the UM/UIM provisions both state that CIC will pay compensatory damages which a covered person is "legally entitled to recover." (*See* Doc. # 1-27 at 22, 27.) Indiana law holds that "legally entitled to recover" requires that

---

[7] Consideration of the factors listed in § 188 does not compel a conclusion contrary to that reached by the Court under § 6.

the insured "establish fault on the part of the uninsured motorist, and establish the amount of his or her damages." *Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 9 (Ind. Ct. App. 2009); *see also, e.g.*, *Allied Fidelity Ins. Co. v. Lamb*, 361 N.E.2d 174, 180 (Ind. Ct. App. 1977) ("It is clear to us that the words 'legally entitled to recover' simply mean that the insured may recover from an insurer under an uninsured motorist claim only after establishing that the uninsured motorist is at fault.")  Until Plaintiff establishes liability and damages, CIC's contractual obligation to pay UM/UIM benefits will not be triggered. *See, e.g.*, *Progressive N. Ins. Co. v. Salata*, No. 3:10-CV-214, 2011 WL 3806267, at *3 (N.D. Ind. Aug. 26, 2011) (unpublished) ("Because [the injured party is] not legally entitled to recover form an uninsured motorist, Progressive is not required to pay under the uninsured motorist provision of the insurance policy.").  This result accords with the law in other jurisdictions, including Colorado.  *See Borjas v. State Farm Mut. Auto Ins. Co.*, 33 P.3d 1265, 1269 (Colo. App. 2001) ("we conclude that the phrase 'legally entitled to recover damages' . . . means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages"); *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (observing, in uninsured motorist case, that "the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined"); *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 564 (Ala. 2005) ("We agree with State Farm that [plaintiff's] breach-of-contract and bad-faith claims were not ripe for adjudication. Without a determination of whether liability exists on the part of the underinsured

motorist and the extent of the plaintiff's damages, a claim for bad-faith failure to pay or breach of contract is premature."). Accordingly, Plaintiff has failed to state a claim against CIC.[8] Absent the establishment of liability and damages, Plaintiff is not "legally entitled to recover" from CIC.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendant Cincinnati Insurance Company's "Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. # 17) is GRANTED, and Plaintiff's Third, Fourth, and Fifth Claims for Relief are hereby DISMISSED WITHOUT PREJUDICE.

DATED: March __22__, 2013

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[8] This result is further supported by the posture of this case. Jami and Robert Fryer have designated a non-party at fault (representing the driver of the car that changed lanes in front of Jami Fryer). (Doc. # 30.) If no liability is found as to such non-party, Plaintiff's UM/UIM claims against CIC necessarily fail. (*See* Doc. # 56 at 3 ("If, after trial on the liability and damage claims, it is determined that the unidentified vehicle was not at fault, and therefore, there is no entitlement to UM benefits, these claims against CIC fail.").) But if liability is apportioned to the non-party at fault, Plaintiff's claims against CIC will arise, and she can then bring them.

[9] Because Plaintiff's breach-of-contract claim is premature, her remaining claims, which are premised on having breached the insurance policy in bad faith, are also not viable at this time. *See, e.g.*, *Davis & Assocs., PC v. Westchester Fire Ins. Co.*, No. 10-cv-03126, 2012 WL 202787, at *12 (D. Colo. Jan. 24, 2012) (unpublished) ("[a]bsent a breach by the defendants of a duty created under the policy, there is no basis for the . . . bad faith breach of insurance contract claim").

11